IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-03584-PAB-MDB

CHRISTOPHER HARDY, individually and on behalf of all similarly situated persons,

    Plaintiff,

v.

JEFFREY PARKER,

    Defendant.

---

**ORDER**

---

This matter comes before the Court on the Motion for Remand to State Court Pursuant to 28 U.S.C. § 1447 [Docket No. 15]. Defendant filed a response. Docket No. 29.

## I. BACKGROUND

Plaintiff Christopher Hardy filed this action in state court on July 17, 2025 on behalf of himself and all others similarly situated. Docket No. 5. Plaintiff avers that he was employed by defendant Jeffrey Parker, the owner of a chain of Five Guys restaurants located in Colorado. *Id.* at 3, ¶¶ 2-3. Plaintiff brings claims for violation of the Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101, *et seq.*, violation of the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101, *et seq.*, and Civil Theft, claiming that defendant improperly failed to provide his employees with mandatory compensated 30-minute meal breaks and ten-minute rest periods *Id.* at 3-7, ¶¶ 11-13,

16-37. Defendant was served on October 10, 2025, Docket No. 1-7 at 2, and timely filed a notice of removal on November 7, 2025. Docket No. 1.

In his notice of removal, defendant claims that the Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). *Id.* at 2, ¶ 6. The notice of removal asserts that, under CAFA, all the requirements for removal have been met because the defendant is a citizen of a different state than a putative class member, there will be at least 100 class members, and the amount in controversy is greater than the requisite $5,000,000. *Id.* at 2-6, ¶¶ 7-21.

Defendant calculated the amount in controversy by determining the total number of shifts worked at Five Guys locations where defendant had an ownership interest between July 17, 2019 and November 6, 2025.[1] *Id.* at 5, ¶ 19. Defendant then determined the average number of hours each employee worked per shift and the average rate at which employees were paid. *Id.* Supported by the declaration of defendant, who reviewed business records to determine the relevant numbers, defendant concluded there were approximately 124,454.82 shifts worked during that period, with employees working an average of 6.36 hours per shift, at an average rate of $14.43 per hour. *Id.*; Docket No. 1-3 at 3, ¶¶ 11-12. Defendant reasoned that if his employees were missing one 30-minute meal period and two ten-minute rest breaks per shift worked, then employees would be missing 50 minutes worth of work per shift. Docket No. 1 at 5, ¶ 20. Defendant then calculated that his employees would be owed

---

[1] Plaintiff's proposed class definition encompasses individuals who worked for defendant as non-exempt employees during this time. Docket No. 5 at 4, ¶ 14.

2

an additional $12.03 per shift which, multiplied by the 124,454.82 shifts, would equal $1,497,191.48 in alleged unpaid wages.[2]  *Id.*, ¶ 21.  Defendant further claimed that, when accounting for statutory penalties under Colo. Rev. Stat. § 8-4-109, the amount in controversy is approximately $5,988,765.94.  *Id.*

On December 4, 2025, plaintiff filed a motion to remand on the grounds that defendant did not meet his burden to show that the amount in controversy exceeds $5,000,000.[3]  Docket No. 15.  Alternatively, plaintiff seeks jurisdictional discovery on both the amount in controversy and the potential applicability of the local controversy or home state exceptions to CAFA, 8 U.S.C. § 1332(d)(3)-(4).  *Id.* at 6-7.  On January 20, 2026, defendant filed a response.  Docket No. 29.

## II.  ANALYSIS

Under CAFA, district courts may exercise jurisdiction over any class action so long as the amount in controversy exceeds $5,000,000,[4] the proposed class contains more than 100 members, and there is minimal diversity, meaning that any member of the plaintiff class is a citizen of a different state than any defendant.  28 U.S.C. §§ 1332(d)(2), (5).  Here, plaintiff argues that defendant did not meet his burden to show that the amount in controversy exceeds $5,000,000.  Docket No. 15 at 2.

---

[2] To determine that employees would be owed an additional $12.03 per shift, defendant calculated how much an employee would make per minute by dividing the average hourly rate of $14.43 by 60.  Docket No. 1 at 5, ¶ 21.  Through this formula, defendant determined that an average employee makes $0.24 per minute.  *Id.*  Defendant then multiplied $0.24 by 50—the purported number of minutes which employees were improperly uncompensated for—to conclude that the average employee was entitled to an additional $12.03 per shift.  *Id.*

[3] Plaintiff "concedes that Defendant has met his burden to show over 100 class members and minimal diversity."  Docket No. 15 at 2.

[4] There is no requirement that each plaintiff meet a separate threshold; rather, claims are aggregated to meet the jurisdictional amount.  28 U.S.C. § 1332(d)(6).

3

When removing a CAFA case to federal court, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  However, when a plaintiff contests that allegation, the defendant must provide evidence establishing the amount in controversy.  *Id.*  Specifically, "a defendant seeking to remove under CAFA must show that the amount in controversy exceeds $5,000,000 by a preponderance of the evidence."  *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1246 (10th Cir. 2012).  The defendant may accomplish the requisite showing by, for example, "compiling calculations from the complaint's allegations, relying on the plaintiff's settlement demands, or bringing forward other 'summary-judgment-type evidence,' such as affidavits, contentions, interrogatories or admissions." *Dudley–Barton v. Serv. Corp. Int'l,* No. 10-cv-03091-CMA-KLM, 2011 WL 1321955, at *2 (D. Colo. Apr. 5, 2011) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir.2008)).  In order to use punitive damages toward the total, the defendant must show that such damages are permitted under state law and that the total award, including compensatory and punitive damages, could exceed the jurisdictional amount. *Frederick*, 683 F.3d at 1248.  If the defendant meets his burden, remand is only permissible if the plaintiff shows that it is legally impossible to recover more than $5,000,000.  *Id.* at 1247.

Plaintiff claims that defendant did not meet his burden because (1) defendant improperly assumed that non-exempt employees missed every possible break; (2) defendant improperly assumed that all shifts were the same length; and (3) defendant

4

failed to account for a change in the law that occurred after filing.  Docket No. 15 at 3-6.  The Court will analyze each argument.

First, plaintiff notes that defendant's calculation relies on the assumption that defendant failed to provide non-exempt employees with every mandated break.  Docket No. 1 at 3.  Plaintiff cites to *Ibarra v. Manheim Invs. Ins.*, 775 F.3d 1193, 1199 (9th Cir. 2015), as support for the proposition that "[s]uch speculative assumptions that every break was missed based on allegations that some breaks were missed cannot meet Defendant's burden."  Docket No. 15 at 3 (citing *Ibarra*, 775 F.3d at 1199).  In *Ibarra*, the defendant calculated an amount in controversy under CAFA through a formula which assumed that the defendant denied all class members one meal break in each of their 5-hour shifts and one rest break in each of their 3.5-hour shifts.  *Ibarra*, 775 F.3d at 1198.  The Ninth Circuit noted that this assumption was based on allegations in the complaint that the defendant "has a pattern and practice of failing to pay their Non-Exempt employees for working off-the-clock" and accuse the defendant of "maintaining an institutionalized unwritten policy that mandates these unlawful practices."  *Id.* (internal quotations omitted).  The Ninth Circuit noted that, "[b]ecause the complaint does not allege that [the defendant] universally, on each and every shift, violates labor laws by not giving rest and meal breaks, [the defendant] bears the burden to show that its estimated amount in controversy relied on reasonable assumptions."  *Id.* at 1199.  Relying on this logic, plaintiff argues that defendant improperly assumed that every break was missed without providing supporting evidence.  Plaintiff notes the importance of this error, stating that "[t]aking the miss rate from 100% to 83% brings the calculation below $5 million to $4,969,609.78."  Docket No. 15 at 3.

5

Defendant notes that *Ibarra* is non-binding and distinguishes it from this case, stating that the allegations in the complaint in *Ibarra* are not as far-reaching as the allegations in the complaint in this case. Docket No. 29 at 6-7. Defendant claims that plaintiff alleged in his complaint that violations occurred at a "universal rate." *Id.* at 6. In coming to this conclusion, defendant seemingly relies on allegations that "Defendant failed to provide Plaintiff and other non-exempt employees all of their required ten-minute breaks" and that "Plaintiff and other non-exempt employees did not receive all required meal breaks." Docket No. 5 at 3-4, ¶¶ 11-12. Thus, plaintiff interprets plaintiff's allegations as stating that defendant failed to provide his non-exempt employees with some—but not every—possible break, while defendant interprets plaintiff's allegations as stating that the defendant universally failed to provide his non-exempt employees with every mandated break.

The Court agrees with plaintiff's interpretation. An allegation that an employer failed to provide his employees with all of their required ten-minute breaks reads as an allegation that the employees were not provided the full amount of ten-minute breaks that they were entitled to. It is not an allegation that the employer provided his employees with none of the required ten-minute breaks. Moreover, defendant argues that "Plaintiff offers no competent evidence—no payroll records, declarations, or time data—showing that violations occurred at anything less than the universal rate." Docket No. 29 at 6. But it is defendant who has the burden of showing by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.[5] *Frederick*, 683 F.3d

---

[5] Defendant speaks of plaintiff's burden here because, in this section of his brief, defendant is arguing that plaintiff failed to show that defendant's calculations are legally impossible. Docket No. 29 at 6. However, the burden only shifts to plaintiff to show that

6

at 1246.  And defendant has provided no evidence supporting his assumption that breaks were missed at a universal rate.[6]  As the Ninth Circuit noted, "a damages assessment may require a chain of reasoning that includes assumptions.  When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them."  *Ibarra*, 775 F.3d at 1199.  Here, there is no reasonable ground underlying defendant's assumption because defendant provides no evidence to support his assumption and because plaintiff's allegations did not allege that defendant provided non-exempt employees with no required breaks.

Additionally, plaintiff argues that defendant improperly assumed that the mean average shift length is a reasonable number to use when calculating uncompensated time resulting from missed breaks.  Docket No. 15 at 3-4.  Plaintiff argues that focusing on the mean average is unreasonable because the mean average does not account for the standard deviation.  *Id.* at 4.  The standard deviation measures how much the pieces of data in a dataset differ from one another.  *Id.*  This is important in this context because non-exempt employees are only entitled to two ten-minute breaks and one 30-minute break when they work more than 6 hours.  *See* 7 C.C.R. § 1103-1: 5.1-5.2.  Thus, defendant's formula assumed that each non-exempt employee was entitled to an additional 50 minutes worth of pay because it assumed they were working for the mean

---

it is legally impossible to recover more than $5,000,000 once defendant meets his initial burden to show by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.  *Frederick,* 683 F.3d at 1247.  Plaintiff does not argue that defendant's calculations were legally impossible because they improperly assume that non-exempt employees missed every shift.  Docket No. 15 at 2-3.  Rather, plaintiff argues that defendant's unsupported assumptions indicate that defendant did not meet his initial burden.  *Id.*

[6] Defendant also failed to provide evidence or argument that his interpretation of plaintiff's allegations should control.  *See generally* Docket No. 29.

average shift length—6.36 hours. However, defendant provided no evidence that there was a low standard deviation, i.e., that most non-exempt employees worked around 6.36 hours. For example, defendant does not discuss to what extent the restaurants employed part-time workers. A part-time worker who worked less than five hours in a shift would only be entitled to one ten-minute break and no 30-minute break. *Id.* Thus, defendant's unsupported assumption that every non-exempt employee worked a 6.36 hour shift could significantly overinflate the actual amount in controversy. Defendant's argument that he permissibly relied on payroll data to determine the average shift length misses the point; the "average shift length" is irrelevant without knowing the standard deviation.[7]

The formula that defendant used to calculate the amount in controversy relied on two assumptions: (1) that non-exempt employees received no required breaks, and (2) that non-exempt employees always worked a 6.36 hour shift. Neither of these assumptions were supported by evidence. Therefore, defendant's formula—which relied on these two assumptions—failed to show by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. Accordingly, defendant did not meet his burden to prove that the Court has jurisdiction pursuant to CAFA.[8]

### III. CONCLUSION

Therefore, it is

---

[7] The Court need not analyze plaintiff's third argument that defendant improperly failed to account for a change in the law that occurred since filing the case because it will grant the motion to remand, Docket No. 15, based on plaintiff's first two arguments.

[8] Because the Court will grant plaintiff's motion to remand, Docket No. 15, it need not consider plaintiff's alternative argument that jurisdictional discovery is warranted.

ORDERED that the Motion for Remand to State Court Pursuant to 28 U.S.C. § 1447 [Docket No. 15] is **GRANTED**. It is further

ORDERED that this case is **REMANDED** to the District Court of El Paso County for all further proceedings. It is further

ORDERED that this case is closed.

DATED January 22, 2026.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge